UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **SEAN PATRICK MASTIN** | **CIVIL ACTION NO. 11-2240-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **CEDRIC GLOVER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

**REPORT AND RECOMMENDATION**

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report, and recommendation.

**STATEMENT OF CLAIM**

Before the court is a civil rights complaint filed by pro se plaintiff Sean Patrick Mastin ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on December 30, 2011. Plaintiff was incarcerated in the Caddo Correctional Center in Shreveport, Louisiana, when he filed this complaint. Plaintiff names Cedric Glover, the Parish of Caddo, Steve Prator, Charles Rex Scott, Bill Edwards, Sarah S. Midboe, Ramona L. Emanuel, the City of Shreveport, Willie Shaw, Robert Gordon, Sr., Robert A. Gordon, G.S. Rudell, Michael Murphy, Jason Allgrun, J.C. Williams, T.W. Oster, and Terry K. Lowery as defendants.

Plaintiff claims Mayor Cedric Glover is responsible for the supervision of the Parish of Caddo, Sheriff Steve Prator, Charles Rex Scott, Bill Edwards, Sarah S. Midboe and Judge Ramona Emanuel. Plaintiff claims the Parish of Caddo is responsible for the supervision of

it employees including Mayor Glover, Sheriff Prator, Charles Rex Scott, Bill Edwards, Sarah Midboe and Judge Emanuel. Plaintiff claims Sheriff Steve Prator is responsible for his incarceration. Plaintiff claims Charles Rex Scott is responsible for the supervision of his employees Bill Edwards and Sarah Midboe. Plaintiff claims Bill Edwards as section chief is responsible for the assignment and supervision of his state criminal case. He claims the City of Shreveport is responsible for the supervision of its employees Mayor Glover, Willie Shaw, Robert Gordon, Sr., G.S. Rudell, Michael Murphy, Jason Allgrunn, J.C. Williams, and T.W. Oster. He claims Willie Shaw is responsible for the training and supervision of his employees Rudell, Murphy, Allgrunn, J.C. Williams, T.W. Oster and Robert Gordon, Sr. and his arrest and incarceration.

Plaintiff claims Robert Gordon, the ex-husband of Ashley Gordon and the son of Detective Gordon is ultimately responsible for his incarceration. Plaintiff claims Officer Michael Murphy and Officer Jason Allgrunn arrested him. Plaintiff claims Detective G.S. Rudell was responsible for the investigation of his arrest. He claims Officer J.C. Williams is responsible for training and supervising all officers on his shift including Detective Rudell. He claims Officer T.W. Oster is responsible for training and supervising all officers on his shift including Officer Allgrunn.

Plaintiff claims Detective Robert Gordon, Sr. helped his son Robert Gordon and Rudell, Murphy, Allgrunn, J.C. Williams, T.W. Oster, Willie Shaw, William Edwards and Judge Emanuel tamper with documents and evidence.

Plaintiff claims that from October 31, 2008 until October 27, 2009, he was in a

relationship with Ashley Gordon. He claims he was not aware that Ashley Gordon was married to Robert Gordon until April 15, 2009, when an altercation occurred between him and Robert Gordon. Plaintiff claims he filed criminal battery charges against Robert Gordon and the Caddo Parish Sheriff issued a warrant for him. Plaintiff claims Robert Gordon turned himself in to the Caddo Correctional Center the following day.

Plaintiff claims that on June 7, 2009, Ashley Gordon and three of her children moved in with him. Plaintiff claims that Robert Gordon harassed and threatened him and Ashley Gordon.

Plaintiff claims that on October 5, 2009, he was arrested for simple kidnapping and aggravated burglary of the residence he shared with Ashley Gordon. He claims he and Ashley Gordon argued about dismissing the charges against Robert Gordon. Plaintiff claims that as he attempted to leave, Ashley Gordon jumped into his car. He claims he and Ashley Gordon decided not to argue and agreed to go eat dinner. Plaintiff claims that as they were driving to the restaurant, they began receiving calls that Ashley Gordon had been kidnapped by him. He claims Robert Gordon called the Shreveport Police Department and reported that Ashley Gordon had been kidnapped.

Plaintiff claims as he was driving to the Shreveport Police Department to turn himself in, he was pulled over by a Shreveport Police Officer. He claims Detective Jerry Cutis approached his vehicle with his gun in his hand. Plaintiff claims he exited his vehicle and Detective Curtis handcuffed him without giving him a Miranda warning. He claims he sat in the police vehicle for approximately 30 minutes and watched officers perform an inventory

search of his car without his consent. Plaintiff claims Corporal Murphy and Officer Mitchell then transported him to the Shreveport Police Department.

Plaintiff claims that after detectives interviewed Mrs. Gordon, they interviewed him. He claims the statement he made is not in any police reports. He claims he was read his Miranda warning and arrested.

Plaintiff claims he bonded out of jail the following day. He claims two days after his arrest, Ashley Gordon activated a cell phone for him on her account.

Plaintiff claims that on October 17, 2009, he was arrested after Robert Gordon saw that he was out of jail. He claims Officer Allgrunn pulled him over as he was going to get gas and food. He claims he was handcuffed and placed in the police vehicle. He claims Officer Allgrunn slammed the vehicle door in his face and without consent searched his vehicle. He claims that after approximately one hour, he was read his Miranda rights and transported to the Shreveport City Jail. Plaintiff claims he was unable to retain bond because Detective Rudell placed a hold on him after Detective Gordon spoke to him.

Plaintiff claims that on October 26, 2009, he activated another phone on Mrs. Gordon's account which she authorized. He claims that on October 27, 2009, Robert Gordon pulled into his driveway after he left to take Ashley Gordon's children to school. He claims that later that day, he and Ashley Gordon argued about him testifying at Robert Gordon's trial on October 29, 2009. He claims a neighbor witnessed Ashley Gordon throw a baseball bat at him and called the Shreveport Police Department. He claims he left the residence before

the police arrived. He claims he was later arrested for unauthorized entry of an inhabited dwelling.

Plaintiff claims that on October 30, 2009, Detective Rudell and Detective Gordon came to the Shreveport City Jail to speak to him. He claims Detective Gordon disconnected the camera in the interview room. He claims after the interview he was charged with intimidating a witness and his bond was set so high that he could not retain release.

Plaintiff claims that three times his name was removed from the list to testify against Robert Gordon. He claims he was eventually transported to the courthouse to testify, but the judge had him returned to the jail. He claims that on the following day, January 27, 2010, he was allowed to take the stand. He claims Sarah Midboe was the prosecutor in both his case and Robert Gordon's case. He claims his appointed attorney then informed the court that he would not pursue the charges against Robert Gordon and the charges were dismissed. Plaintiff claims Detective Gordon and Assistant District Attorney then smiled at him.

Plaintiff claims that in April 2010, he was offered a plea bargain of three years probation for the unauthorized entry charge and nine misdemeanor charges. He claims he refused the deal and proceeded to trial in December 2010. He claims the information at trial was altered. Plaintiff claims court reporter Terry K. Lowery falsified documents from his court proceedings.

Plaintiff claims he was convicted of attempted simple kidnapping. He claims that on February 1, 2011, Judge Ramona Emanuel sentenced him to serve the maximum sentence of

two and a half years at hard labor with credit for time served.

Plaintiff claims that prior to his sentencing, he had been detained for 462 days at the Caddo Correctional Center. He claims the trial court and prosecutor filed and submitted erroneous paperwork to the Caddo Parish Sheriff's Office, who then submitted the erroneous paperwork to the Louisiana Department of Corrections. He claims the paperwork stated he was remanded on December 9, 2010 to return to custody pending his sentencing on February 1, 2011. He claims that because of the erroneous paperwork, he was denied credit for the 406 days he served in custody prior to December 9, 2010.

Accordingly, Plaintiff seeks monetary compensation, punitive and nominal damages, attorney fees and costs, credit for time served, his immediate release from incarceration, declaratory relief, for Defendants to be disciplined, and any other just and equitable relief he is entitled to.

## LAW AND ANALYSIS

**Heck Claim**

Plaintiff claims he was falsely arrested, convicted, and sentenced. He further claims his sentence was incorrectly calculated. Plaintiff is seeking monetary damages and declaratory and injunctive relief for an allegedly unconstitutional conviction and sentence. The United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the

conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994). Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983. See Edwards v. Balisok, 520 U.S. 641,648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190-91 (5th Cir. 1998). Heck involved a civil rights claim brought by a state prisoner. The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit. See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary damages and declaratory and injunctive relief for civil rights violations under Section 1983; therefore, he must prove his conviction or sentence has been invalidated. He has not met this precondition and his complaint must be dismissed until such time that he can demonstrate that his conviction or sentence have been invalidated.

**Judge Ramona L. Emanuel**

Plaintiff claims Judge Ramona L. Emanuel tampered with documents and evidence. Plaintiff cannot allege claims against Judge Emanuel. It is well established that judges enjoy absolute immunity from liability for damages arising out of performance of their judicial

duties, regardless of bad faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213 (1967); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978). Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge. Brewster v. Blackwell, 692 F.2d 387, 396-97 (5th Cir. 1982). The conduct challenged by Plaintiff unequivocally falls within the judge's authority as judicial officer of the court and in the ordinary exercise of judicial duties.

Accordingly, Plaintiff's civil rights claims against Judge Ramona Emanuel should be dismissed as frivolous.

**District Attorney Charles Scott and Assistant District Attorneys Edwards and Midboe**

Plaintiff claims District Attorney Charles Scott is responsible for the supervision of his employees Bill Edwards and Sarah Midboe. He claims Bill Edwards, as section chief, is responsible of the assignment and supervision of his criminal case. He further claims Bill Edwards tampered with documents and evidence. He claims Sarah Midboe had a conflict of interest because she prosecuted both him and Robert A. Gordon. Prosecutors have absolute immunity when acting in a quasi-judicial mode. Imbler v. Pachtman, 424 U.S. 409, 106 S.Ct. 984, 47 L.Ed.2d 128 (1976); Geter v. Fortenberry, 849 F.2d 1550 (5th Cir. 1988). The Fifth Circuit has repeatedly recognized the purpose of the immunity defense is to protect public officials from undue interference with their duties and from disabling threats of liability. Geter, 849 F.2d at 1552. Absolute immunity is immunity from suit rather than from liability. Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985). The Fifth Circuit "has likewise accepted the premise that the protected official should be sheltered from trial and pre-trial preparation as

well as liability." Id. at 1478.

The conduct challenged unequivocally falls within the authority of the District Attorney and Assistant District Attorneys as quasi-judicial officers of the court and in the ordinary exercise of their quasi-judicial duties. Accordingly, Plaintiff's civil rights complaint against District Attorney Charles Scott and Assistant District Attorneys Edwards and Midboe should be dismissed as frivolous.

**Robert A. Gordon**

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. A plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person acting under color of state law. Plaintiff has not alleged any action that would give rise to defendant Robert A. Gordon being a state actor for purposes of section 1983. Because plaintiff is not complaining of any civil rights violations committed by a "state actor," this section 1983 claim lacks an arguable basis in law.

Accordingly, Plaintiff's civil rights complaint against Robert A. Gordon should be dismissed as frivolous.

**Habeas Claim**

Plaintiff alleges his conviction and sentence are illegal and seeks his release from incarceration and credit for time served. Although Plaintiff submitted his claim on the standardized civil rights complaint form, it is incumbent upon this court to determine

preliminarily whether the facts alleged establish a claim under 42 U.S.C. § 1983 of the Civil Rights Act, or whether the claim is one which must be pursued initially in a habeas corpus proceeding. This determination is made by focusing on "the scope of relief actually sought." Alexander v. Ware, 417 F.2d 416, 419 (5th Cir. 1983); Serio v. Members of the La. State Bd. of Pardons, 821 F.2d 1112, 1117 (5th Cir. 1987).

When a claimant challenges the very fact or duration of his physical confinement and seeks an immediate release or speedier release from confinement as relief, he must pursue his claim through an application for writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973). In accordance with this guideline, the United States Court of Appeals for the Fifth Circuit adopted a "per se rule barring consideration of claims under [42 U.S.C.] § 1983 that directly or indirectly challenge the constitutionality of the state conviction or sentencing decision under which the claimant is currently confined." Serio, 821 F.2d at 1117 (citing Fulford v. Klein, 529 F.2d 377, 381 (5th Cir. 1976), adhered to en banc, 550 F.2d 342 (1977)). Plaintiff is challenging his conviction and sentence and his claim clearly falls within the strictures of this guideline.

However, habeas relief is unavailable to Plaintiff at this time. Although such relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254, the right to pursue habeas relief in federal court is not unqualified. It is well settled that a petitioner seeking federal habeas corpus relief cannot collaterally attack his state court conviction or sentence in federal court until he has exhausted all available state remedies. See 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509

(1982); Minor v. Lucas, 697 F.2d 697 (5th Cir. 1983).

This requirement is not a jurisdictional bar, but a procedural one erected in the interest of comity to provide state courts first opportunity to pass upon and to correct alleged constitutional violations. See Picard v. Connor, 404 U.S. 270, 275 (1971); Rose v. Lundy, 455 U.S. 509 (1982). From the information provided in Petitioner's complaint and amended complaint, it does not appear that he has exhausted his available state remedies. Therefore, Plaintiff is not entitled to habeas relief at this time because he has failed to exhaust his state court remedies.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims seeking monetary damages and injunctive and declaratory relief for his allegedly unconstitutional conviction

and sentence be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met. **IT IS FURTHER RECOMMENDED** that Plaintiff's civil rights claims against Judge Ramona Emanuel, Charles Scott, Bill Edwards, Sarah Midboe, and Robert A. Gordon be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e). **IT IS FURTHER RECOMMENDED** that Plaintiff's request for habeas relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under Section 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 3rd day of December, 2013.

_____
Mark L. Hornsby
U.S. Magistrate Judge